UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| JIMMIE EMERY | : | CIVIL ACTION NO.: 6:20-cv-00671 |
| VERSUS | : | JUDGE: SUMMERHAYS |
| OPELOUSAS HOUSING AUTHORITY | : | MAGISTRATE: WHITEHURST |
| | | MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |

### OHA'S MEMORANDUM IN SUPPORT OF <u>MOTION FOR SUMMARY JUDGMENT</u>

Respectfully submitted,

**The Dill Firm, A.P.L.C.**

BY:      */s/ Michael Wynne*
K. WADE TRAHAN (Bar Roll #20474)
MICHAEL WYNNE (Bar Roll #36096)
825 Lafayette Street
Post Office Box 3324
Lafayette, Louisiana 70502-3324
Telephone: (337) 261-1408
Facsimile: (337) 261-9176
ATTORNEYS FOR OPELOUSAS HOUSING AUTHORITY

# TABLE OF CONTENTS

I.    INTRODUCTION: ........................................................................................................ 1
II.   FACTUAL CIRCUMSTANCES: ................................................................................ 1
III.  LEGAL AUTHORITIES & ARGUMENT: ................................................................ 3
   A.   Summary Judgment Standard ................................................................................ 3
   B. Causes of Action ...................................................................................................... 4
   C. At-Will Employment ............................................................................................... 4
   D. Claim Under the ADA ............................................................................................ 5
   E. Disability .................................................................................................................. 5
   F. Intentional Infliction of Emotional Distress ........................................................... 8
   H. Public Humiliation ................................................................................................. 12
IV. CONCLUSION ............................................................................................................. 13
CERTIFICATE OF SERVICE ........................................................................................... 14

# TABLE OF AUTHORITIES

## STATUTES

29 C.F.R.§1630.2(j)(1)(ii) ........................................................................................................ 6
41 U.S.C. §12102(3)(A) ........................................................................................................... 6
42 USC §12102(1) .................................................................................................................... 6
Fed. R. Civ. Pro. 56 (c) ............................................................................................................. 4
LSA-C.C. Art. 2747 .................................................................................................................. 5

## CASES

*Albertson's Inc. v. Kirkingburg* 527 U.S. 555, 567, 119 S. Ct. 2164, 144 L.Ed. 2d 518 (1999) ... 6
*Amedee v. Shell Chemical LP-Geismer Plant,* 384 F.Supp. 3d 613, 622 (MD La. 2019) .............. 4
*Amedee v. Shell Chemical LP-Geismer Plant,* 384 F.Supp. 3d 613, 638-39 (MD La. 2019) ........ 5
*Celotex Corporation v. Catrett* 477 U.S. 317 323, 325, 106 S.Ct. 2548, 91 L. Ed.2d 265 (1986) 3
*Cross v. Cummins Engine Co.* 993 F.2d 112, 114 (5th Cir. 1993) ................................................. 4
*de la Torres v. Bolger*, 781 F. 2d 1134, 1137 (5th Cir. 1986) ......................................................... 6
*E.E.O.C. v. Chevron Phillips Chemical Co.* 570 F.3d 606, 614 (5th Cir. 2009 ............................. 6
*Evans v. City of Dallas*, 861 F.2d 846,852 (5th Cir. 1988) ............................................................ 6
*Harrison v. CD Consulting,* 05-1087 (La. App. 1 Cir. 5/5//06), 934 So. 2d 166 ......................... 5
*Hochman v Westward Communications, LLC*, 407 F. 3d 317 (5th Cir. 2004) ............................. 11
*McInnis v. Alamo Community College Dist*., 207 F.3d 276, 280 (5th Cir. 2000) ........................... 6
*Pizza's Seafood World LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006) ..................................... 4
*Quebedeaux v. Dow Chemical Co.,* 01-2297 (La. 6/21/02), 820 So. 2d 542 ................................ 5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| JIMMIE EMERY | : | CIVIL ACTION NO.: 6:20-cv-00671 |
| VERSUS | : | JUDGE: SUMMERHAYS |
| OPELOUSAS HOUSING AUTHORITY | : | MAGISTRATE: WHITEHURST |
| | | MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |

**NOW INTO COURT**, through undersigned counsel comes the **HOUSING AUTHORITY FOR THE CITY OF OPELOUSAS** ("Mover and/or "OHA") who submits this memorandum in support of its Motion for Summary Judgment.

**I.   INTRODUCTION:**

This civil action involves Petitioner's probational employment with OHA. Jimmie Emery (Emery) was probationally hired as an Inspector 2 with OHA. Prior to the lapse of the probationary period, Petitioner's employment was terminated, and Emery seeks redress for what he alleges was a wrongful termination.

**II.   FACTUAL CIRCUMSTANCES:**

Emery began his employment with OHA on June 17, 2019 to fill the position of Inspector 2. As acknowledged by Emery, this employment was probationary in nature and required medical clearance for full-time employment.[1] It is undisputed OHA maintained a policy of probational employment which became effective on September 15, 2010; See Exhibit "B". This policy was in effect at the time Emery began his employment with OHA.[2] All material times herein, Emery was

---

[1] See Exhibit A-; pgs.28-29; 30, lines 25-12; 1-5.
[2] See Exhibit F (3 & 4)

1

subject to this employment policy. At the time of his hire, Petitioner was also a Plaintiff in a personal injury lawsuit originating out of a motor vehicle collision. Emery admits he experienced mid to lower back pain as a result of this collision.[3]

Emery was required to complete and pass a physical examination prior to transitioning to full-time employment. The physical requirements of the Inspector position were transmitted by OHA Director, Joann Tyler ("Tyler") to the Family Clinic in Opelousas, Louisiana.[4] Emery was evaluated by Dr. Michael Basile (Basile) at this facility on June 18, 2019, wherein Basile concluded Emery was not acceptable for this job description; See Exhibit "D". Based on Basile's evaluation, Emery was terminated from the employ of OHA.[5]

To better understand the nature of Petitioner's back condition, Emery admits he underwent radiofrequency ablation (RFA) and was offered other treatment options, including the implementation of a spinal card stimulator and potential surgical fusion.[6] These treatment options should confirm Emery's condition exceeded that of a strain/sprain type of ailment. Dr. George Williams, Emery's own treating physician, reluctantly released Emery to full duty employment' See Exhibit "E". It should be noted Williams' release was issued without consideration of the physical requirements of the position.

*Procedural History*

Subsequent to his discharge, Emery filed a Charge of Discrimination with the EEOC (Charge No. 461-2019-02152) on July 9, 2019. Subsequent to the filing of this Charge Emery instituted this suit (pro se) in the 27th Judicial District Court for St. Landry Parish. Defendant

---

[3] See Exhibit A-; pgs.32-33, lines11-3
[4] See Exhibit F (5).
[5] See Exhibit C
[6] See Exhibit A; pg. 33 lines 10-16 (RFA): pgs. 34-35, lines 24-6 (injections): pg. 57, lines 15-25 (fusion) and pgs. 65-66, lines 17-20 (spinal cord stimulator).

2

removed this action by Petition for Removal [Doc. 1] dated May 28, 2020. The Order of Removal [Doc. 4] was signed on June 1, 2020.

As set out in his Petition Emery's causes of action against OHA are as follows:

- employment discrimination based on disability (ADA);
- hostile work environment;
- public humiliation;
- intentional infliction of emotional distress.

OHA contends there exist no genuine issue of material fact Emery will be unable to sustain his burden with regards to the ADA claim asserted as well as his claims for the alleged intentional infliction of emotional distress and hostile work environment.

As to Emery's claims of public humiliation, OHA argues the context in which it is asserted should leave no doubt with this court this cause is not recognized within our body of law and summary judgment is therefore appropriate.

**III.  LEGAL AUTHORITIES & ARGUMENT:**

*A.  Summary Judgment Standard*

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56 (c). "The movant has the burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. The substantive law governing the claims identifies the essential elements and thus indicates which facts are material." *Celotex Corporation v. Catrett* 477 U.S. 317 323, 325, 106 S.Ct. 2548, 91 L. Ed.2d 265 (1986).

"A factual dispute is deemed **genuine** if a reasonable juror could return a verdict for the nonmovant, and the fact is considered material if it might affect the outcome of the litigation under the governing substantive law." *Cross v. Cummins Engine Co.* 993 F.2d 112, 114 (5th Cir. 1993). Summary judgment is proper if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 470 7S at 322-23; *Pizza's Seafood World LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).

"The party opposing summary judgment is obligated to set forth specific facts which demonstrate a genuine issue for trial. When the nonmovant fails to direct the court to specific evidence in the record to controvert the supporting evidence set forth by the movant, the fact is deemed admitted." *Amedee v. Shell Chemical LP-Geismer Plant,* 384 F.Supp. 3d 613, 622 (MD La. 2019) *citing FRCP 56*.

*B. Causes of Action*

As set forth above OHA argues summary judgment is appropriate as there exist no genuine issues of material fact; (1) Emery will not be able to sustain the applicable burdens of proof as to his claims asserting a violation of the ADA, intentional infliction of emotional distress as well as hostile work environment; and (2) Emery's claim of public humiliation is not a recognized cause of action.

*C. At-Will Employment*

While OHA intends to address each cause asserted separately, an overlying consideration in any employment matter where termination is an issue is the legal predicate that Louisiana is an "at will" employment state. At-will employment has a strong presence in Louisiana law as it is codified at LSA-C.C. Art. 2747. Under this article, an employer is generally at liberty to dismiss an employee at any time, for any reason, without incurring liability for the discharge, provided

termination does not violate any statutory or constitutional provisions; *Quebedeaux v. Dow Chemical Co.,* 01-2297 (La. 6/21/02), 820 So. 2d 542, 545-46. "Moreover, employment "at will" is firmly established in Louisiana law.[7]

### D. Claim Under the ADA

To prove a prima facie case under the ADA a plaintiff must show that (1) he has a disability within the meaning of the ADA, (2) he is qualified for the job position, and (3) he was subjected to an adverse employment action on account of his disability or perceived disability.[8] It is the first prong of this analysis which the defense contends Petitioner will be unable to satisfy at the trial on the merits.

### E. Disability

Under the ADA, an individual is regarded as disabled if he has been subjected to an action prohibited under the ADA "because of an actual or perceived physical or mental impairment whether or not the impairment limits or its proceeds to limit a major life activity."[9] Under the ADA, an individual suffers from a "disability" if that individual has "a physical …impairment that substantially limits one or more major life activities."[10] In 2008, Congress expanded, by an amendment to the ADA, the definition of "disability". In a post-amendment case, the inquiry is whether a plaintiff's impairment substantially limits his ability "to perform a major life activity as compared to most people in the general population."[11]

A major life activity is "substantially limited" when the individual is (1) unable to perform a major life activity that the average person in the general population can perform; or (2)

---

[7] See *Harrison v. CD Consulting,* 05-1087 (La. App. 1 Cir. 5/5//06), 934 So. 2d 166.
[8] See *Amedee v. Shell Chemical LP-Geismer Plant,* 384 F.Supp. 3d 613, 638-39 (MD La. 2019).
[9] See 41 U.S.C. §12102(3)(A).
[10] See 42 USC §12102(1).
[11] See 29 C.F.R.§1630.2(j)(1)(ii).

significantly restricted as to the condition, manner, or duration under which the average person can perform the same major life activity.[12] "Simply having an impairment is insufficient to make one disabled under the statute; a plaintiff must also show that the impairment substantially limits a major life activity"; see *E.E.O.C. v. Chevron Phillips Chemical Co.* 570 F.3d 606, 614 (5th Cir. 2009. Moreover, a plaintiff must have more than a diagnosis of an impairment to prove that he has a disability under the statute; those claiming the act's protection must prove a disability by offering evidence that the extent of the limitation in terms of their own experience is substantial.[13] An individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's lives. The impairment impact must also be permanent or long term. An impairment does not include transitory illnesses which have no permanent effect on the person's health.[14]

Emery's physical condition and abilities were discussed at his deposition.

```
 5  Q  Okay, fair enough.  All right.  When you
 6        began with the housing authority, were you
 7        able to perform the majority if not all of
 8        major life activities?
 9  A  Yes.  Well, I want to say -- what do you
10        mean by that?
11  Q  Well, could you bathe yourself?
12  A  That's correct.
13  Q  You could dress yourself?
14  A  Yes, sir.
15  Q  You could operate a vehicle?
16  A  Yes, sir.
17  Q  You could talk on the phone?
18  A  Yes, sir.
19  Q  You could walk without assistance?
```

---

[12] See *McInnis v. Alamo Community College Dist.*, 207 F.3d 276, 280 (5th Cir. 2000), *quoting* 29 C.F.R. §1630.2
[13] See *Albertson's Inc. v. Kirkingburg* 527 U.S. 555, 567, 119 S. Ct. 2164, 144 L.Ed. 2d 518 (1999).
[14] See *de la Torres v. Bolger*, 781 F. 2d 1134, 1137 (5th Cir. 1986). See also *Evans v. City of Dallas*, 861 F.2d 846,852 (5th Cir. 1988).

```
20  A   That's correct.
21  Q   You know, if you maintained your yard, were
22      you able to do all those things?
23  A   I was able to do a lot of things but some of
24      the things that I didn't feel comfortable
25      with doing was like going on the scaffold.

0065
 1      Being a scaffold builder you go 300 feet in
 2      the air.  It's not something that hey,
 3      look, we going 350 feet in the air, it's --
 4      I don't play with people's lives, you know.
 5      Like I want to make sure that -- if I'm
 6      comfortable, once I'm clear with everything
 7      the doctor says I'm not supposed to do, I'm
 8      clear.  Now, do I think that the doctors --
 9      that I should let the doctor put in a
10      stimulator inside of me at this -- at my
11      age with, you know, I'm pretty darn healthy
12      so I -- I don't -- people give
13      recommendations.  It doesn't mean that that
14      recommendation is best for you or --  [15]
```

Further in the deposition Emery was asked about his physical limitations;

```
    Q   Okay.  All right.  But as far as your
22      limitations, physical limitations, you
23      could do the daily life activities that we
24      customarily do every day?
25  A   Yes, that's correct.[16]
```

    By his own admission, Emery, despite his physical condition, was in no way limited from performing any of life's daily activities. This admission alone strikes at the "disability" requirements for recovery under the ADA. Specifically, Emery's deposition testimony substantiates he (Emery) is not "disabled" as defined by the ADA. Absent a "disability" there can be no recovery under the Act and therefore summary judgment should be granted as to this cause of action.

---

[15] See Exhibit A; pgs. 64-65; lines 5-14
[16] See Exhibit A; pg. 66; lines 21-25

7

*F. Intentional Infliction of Emotional Distress*

As identified above, Emery has asserted a claim for intentional infliction of emotional distress. At his deposition on March 12, 2021, Emery was asked to explain his basis for asserting this cause. His response was as follows:

```
8   Q   Okay.  The intentional infliction of
9       emotional distress.  I want you to explain
10      what your basis, the factual basis, that
11      you have where you believe the housing
12      authority intentionally inflicted
13      emotional distress.
14  A   Well, when I say that it's because when I
15      started this job, I've lost other
16      opportunities that were more valuable which
17      paid more money than what I was offered at
18      the housing authority.
19  Q   Okay.
20  A   Okay.  I then had to shift some of my job
21      that I was working to other people which
22      lost income because I had to focus on this.
23      They even told me one time, hey, make sure
24      you don't conduct your personal business
25      here which was understandable.  But when I

0078
1       did that, I think my house started going
2       into foreclosure because now I -- I'm not
3       working.  I've just transferred all of the
4       jobs that I had and the house -- I was only
5       behind like maybe three months.  I ended up
6       having to pay Twelve Thousand Dollars
7       ($12,000.00) because I was behind those
8       three months and they wanted to foreclose.
9       I had to represent myself in those cases as
10      well.
11  Q   Okay.
12  A   So it's -- it's a series of things that --
13      that led up to I'm about to lose my house
14      now because I thought I had this job that I
15      had going on.  I'm -- I'm -- I just bought
16      this house over here, you know, and that --
17      that's where I was at.
18  Q   Okay, so that -- what you've just described
```

8

```
19      for me is your basis for this claim of
20      intentional infliction of emotional
21      distress?
22   A  That's correct.
23   Q  Okay. All right. Now, as a result of what
24      you've just described, have you sought help
25      or treatment from any psychiatrist or

0079
 1      psychologist?
 2   A  No, I have not.
 3   Q  Okay. Are you on any what I would describe
 4      as emotional or psychological prescription
 5      medication as a result of that?
 6   A  No, I'm not.[17]
```

The cornerstone decision applicable to any claim of intentional infliction of emotional distress was delivered by the Louisiana Supreme Court in *White v. Monsanto Co.,* 585 So.2d 1205 (La. 1991). The court concluded that in order for a plaintiff to recover for the intentional infliction of emotional distress the following factors must be established:

   i)    the conduct of the defendant was extreme and outrageous;

   ii)   emotional distress suffered by the plaintiff was severe; and

   iii)  the defendant desired to inflict emotional distress or knew that severe emotional distress or knew that severe emotional distress certain or substantially certain to result from the conduct. See *White* at pg. 1209.

Emery's description of the Housing Authority's conduct falls short of the requisite "extreme and outrageous" conduct necessary to sustain such a claim. No court within our jurisdiction has recognized the termination of probational employment as extreme and outrageous conduct. The defense also argues Emery will be unable to satisfy the second factor identified which

---

[17] See Exhibit A, pgs. 77-79, lines 8-6.

9

requires Emery to show the emotional distress inflicted was severe, given the cited deposition testimony.

*G. Hostile Work Environment*

Addressing the hostile work environment claim Emery testified as follows:

```
16  Q   Okay. All right. Let's talk about hostile
17      work environment. I have a familiarity
18      with hostile work environment in a sexual
19      harassment context. Are you asserting that
20      you were sexually harassed while you were
21      employed with the Opelousas Housing
22      Authority?
23  A   No.
24  Q   Okay. So then I want you to explain to me
25      your basis for this hostile work

0086
 1      environment claim. Is it something you've
 2      already described for me, because I don't
 3      want you to repeat yourself --
 4  A   Yeah.
 5  Q   -- if you don't have to.
 6  A   The hostile work -- work is it comes when
 7      you have a conflict with a superior person
 8      because of something that -- that's going
 9      on.
10  Q   Okay, I understand now. So what you just
11      described between Mr. Tyler, Ms. Tyler, and
12      the misdirection or miscommunication as you
13      described is your basis for the hostile
14      work environment?
15  A   That's correct.
16  Q   Okay, that's fine.
17  A   Yeah, because he -- he would get really,
18      really mad at me for something that he --
19      and Mr. Ty -- Mr. Pete, he's having surgery
20      but I guess because he's permanent it that
21      doesn't matter.
22  Q   Okay.
23  A   You know, but he -- he was worse off than I
24      am and it's like how can I not do -- do the
25      job that y'all hired me for; that's what
```

10

0087
1    you hired me for.[18]

As this court is aware a "hostile work environment" is a form of sexual harassment which is prohibited under Title VII. For a plaintiff to successfully prosecute a claim of sexual harassment predicated upon a hostile work environment, the following factors must be proven:

(1) plaintiff belongs to a protected group;

(2) he was subjected to unlawful sexual harassment;

(3) the harassment complained of was based on sex;

(4) the harassment affected in turn, condition, or privilege of his employment; and

(5) his employer knew or should have known of the harassment and failed to take prompt remedial action.[19]

From the description provided by Emery, this court can easily take notice Emery was not subjected to an actionable hostile work environment. The conduct identified and described by Emery falls woefully short of establishing a viable sexual harassment claim (hostile work environment) based upon the criteria identified by the applicable jurisprudence cited. Furthermore, Emery's petition is void of any factual allegations that he (Emery) was sexually harassed. It should be evident based on the evidence marshalled before this court there is insufficient evidence for Emery to sustain a sexual harassment/hostile work environment claim against the OHA.

Defendants argue Emery will be unable to sustain the necessary burden for his claims of intentional infliction of emotional distress, employment discrimination in accordance with the provisions of the ADA as well as the alleged hostile work environment. As stated above Emery is not "disabled" as defined by the act and cannot therefore clothe himself with the protections

---

[18] See Exhibit A; pgs. 85-87; lines 16-1.
[19] See *Hochman v Westward Communications, LLC*, 407 F. 3d 317 (5th Cir. 2004).

afforded by the statute. This also holds true for Emery's claim of intentional infliction of emotional distress. Emery's own testimony corroborates the defense's argument that he (Emery) lacks sufficient evidence to sustain the requisite factors identified by the Louisiana Supreme Court in *White v. Monsanto Co., supra.* Given the foregoing, Defendants assert there exists no genuine issue of fact Plaintiff will be unable to sustain either burden and therefore summary judgment is appropriate.

    *H. Public Humiliation*

    Emery's remaining cause of action (public humiliation) should be dismissed by this dispositive motion as it is not distinct or recognized cause of action under Federal or Louisiana law. Emery described his claim for public humiliation as follows:

```
7  Q   Okay.  I think we've covered that.  Let's
8      talk about public humiliation.  Do for me
9      what you just did as far as the intentional
10     infliction of emotional distress.  Explain
11     to me your basis for the assertion of this
12     public humiliation claim.
13  A   Well, basically for the public humiliation
14     is because you knew already you were going
15     to fire me.
16  Q   Okay.
17  A   Prior to making me run around getting the
18     documentations for you, making me feel
19     embarrassed in front of the -- the staff
20     members, because they already knew that I
21     was going to be fired prior to me being
22     fired.
23  Q   How do you know that, Mr. Emery?
24  A   Because prior to being fired, we've had
25     these discussions with these different

0080
1      people there.  And I said hey, look, I
2      don't want to engage in anything that's --
3      because I believe in doing the right thing.[20]
```

---

[20] See Exhibit A, pgs.79-80, lines 7-3.

Emery's public humiliation claim is predicated upon the assumption OHA intended to terminate his employment before he was sent to secure medical clearance for the position. Yet there is absolutely no evidence to support Petitioner's assumption. Regardless of Petitioner's assumption there is simply no cause of action which fits this factual anatomy. Without a supporting factual basis Emery's claim for public humiliation should be dismissed.

## IV. CONCLUSION

Defendant contends it has marshalled all of the relevant facts before this court in the form of deposition testimony and corroborating exhibits. The cited excerpts from Emery's deposition are intended to assist this court by providing the context and basis for each claim asserted. As argued above, summary judgment is appropriate as to all claims asserted by Emery.

As to Emery's claims of intentional infliction of emotional distress, hostile work environment and violation of the ADA, it is the defense's position there exist no genuine issue of material fact Emery will be unable to sustain his burden of proof at trial as to these causes of action. The facts as cited do not support the asserted causes of action. The inability of Emery to sustain these multiple burdens warrants a dismissal of these claims. Based on the arguments presented Defendant request this court grant its dispositive motion.

Finally, Emery's claim of public humiliation has no legal basis in law. Additionally, as noted from Emery's deposition testimony, this cause is solely based on an assumption without any supporting facts. As such this court should dismiss this claim by the granting of the defense's Motion for Summary Judgment.

Respectfully submitted,

**The Dill Firm, A.P.L.C.**

BY:     */s/ Michael Wynne*
K. WADE TRAHAN (Bar Roll #20474)
MICHAEL WYNNE (Bar Roll #36096)
825 Lafayette Street
Post Office Box 3324
Lafayette, Louisiana 70502-3324
Telephone: (337) 261-1408
Facsimile: (337) 261-9176
ATTORNEYS FOR OPELOUSAS HOUSING
AUTHORITY

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 20th day of August 2021, a copy of the foregoing pleading was filed electronically with the Clerk of Court using CM/ECF system. Notice of this filing will be sent to counsel for all parties to this proceeding by operation of the court's electronic filing system.

    */s/ Michael Wynne*
MICHAEL C. WYNNE

14